[Cite as *State v. Pierce*, 2018-Ohio-3967.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-020** |
| TIARVRIO PIERCE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000534.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Tiarvrio Pierce, appeals his convictions for Trafficking and Possession following a jury trial in the Lake County Court of Common Pleas. The issue before this court is whether convictions for Trafficking and Possession are supported by sufficient evidence and/or against the manifest weight of the evidence where the defendant's DNA is one of several contributors' DNA found on the evidence but the defendant is implicated in the crimes by other circumstantial evidence. For the following reasons, we affirm the decision of the court below.

{¶2}   On May 12, 2017, the Lake County Grand Jury indicted Pierce for the following: Trafficking in Cocaine (Count 1), a felony of the third degree in violation of R.C. 2925.03(A)(2); Possession of Cocaine (Count 2), a felony of the fourth degree in violation of R.C. 2925.11; Trafficking in Marijuana (Count 3), a felony of the fourth degree in violation of R.C. 2925.03(A)(2); Aggravated Trafficking in Drugs (Count 4), a felony of the third degree in violation of R.C. 2925.03(A)(2); and Aggravated Possession of Drugs (Count 5), a felony of the fifth degree in violation of R.C. 2925.11. All Counts of the Indictment included Forfeiture Specifications pursuant to R.C. 2941.1417 and R.C. 2981.04.

{¶3}   On June 2, 2017, Pierce was arraigned and entered a plea of "not guilty" to the charges in the Indictment.

{¶4}   On November 6 and 7, 2017, Pierce's case was tried to a jury. The following testimony was given on behalf of the State:

{¶5}   Officer Richard Smith of the Mentor Police Department testified that, at approximately 4:00 a.m. on October 8, 2016, he responded to a dispatch regarding an impaired driver. Smith located the vehicle, registered to Daroni Williams, traveling "quite fast" northbound on Center Street. Smith followed the vehicle onto Edgewood Road and Melshore Drive. The vehicle came to a stop on Melshore near Fairfax Elementary School and an African-American male exited the vehicle and ran into a backyard. Smith was unable to pursue the suspect.

{¶6}   Other officers and a K-9 unit arrived on the scene. A search of the area revealed two plastic baggies, a dollar bill, and a cell phone by a chain-link fence around the yard of a house on Meadowdale Drive, west of the yard into which the suspect had fled. One of the baggies held smaller baggies containing individual rocks of crack

2

cocaine. The other baggie held suspected heroin. On the night in question, several phone calls had been made and text messages sent from the cell phone to Alexandria Fourqurean, a resident of 6310 Melshore Drive.

{¶7} Inside the vehicle, two baggies of marijuana were found.

{¶8} Outside the vehicle, a black cloth or do-rag was found by the driver's side door.

{¶9} Kimberly Gilson, a forensic analyst at the Lake County Crime Laboratory, testified that one of the baggies recovered near the fence contained 5.9 grams of cocaine (the larger baggie contained 3.69 grams and the remaining 2.21 grams was divided up in twenty-two smaller baggies) and the other baggie contained 0.13 grams of 4F-PHP. The baggies recovered from the vehicle contained 0.72 grams and 0.73 grams of marijuana.

{¶10} LeAnne Suchanek, the assistant laboratory director at the Lake County Crime Laboratory, analyzed certain items of the State's evidence for DNA: the plastic baggies containing 4F-PHP, cocaine, and marijuana, the do-rag, and the vehicle (samples taken from the driver's door, steering wheel, and gear shift). Each piece of evidence contained DNA from between two and four contributors with an exceedingly high probability of Pierce being one of the contributors.[1]

{¶11} Detective Jonathan Miller of the Mentor Police Department was assigned to investigate the Pierce case. He made several attempts to contact the registered-

---

1. For the baggie containing 4F-PHP, there were three contributors with it being three quintillion times more likely that Pierce was a contributor than there being three unidentified contributors. For the baggies containing cocaine, there were two contributors with it being five hundred and ninety-three billion times more likely that Pierce was a contributor than there being two unidentified contributors. For the baggie containing marijuana, there were two contributors with it being one hundred and six septillion times more likely that Pierce was a contributor than there being two unidentified contributors. For the do-rag there were three contributors with it being one trillion times more likely that Pierce was a contributor than there being three unidentified contributors. For the vehicle there were four contributors with it being four quadrillion times more likely that Pierce was one of the contributors than there being four unidentified contributors.

owner of the vehicle, Daroni Williams, but was unable to do so. He was able to determine that Pierce was in a relationship with Fourqurean, a resident of Melshore Drive, and that they have a child together.

{¶12} Detective Miller interviewed Pierce twice on October 25, 2016, and recordings of the interviews were played for the jury. Pierce admitted that Fourqurean is his "girl" and that he stays with her. He claimed to have "no idea" about the vehicle. He then claimed to "know what's going on" and confided to the police: "My dude" was dropping off some "shit" and/or "medicine" to me at Fourqurean's when he was pulled over by the police. Pierce knew "what happened 'cause [he] was on Melshore the whole time when he [Pierce's dude] came over at six in the morning." Pierce claimed to have been in his dude's car many times but does not know his "real name" because that is not the custom of "the streets." The items being delivered that morning included his cell phone and marijuana. Detective Miller asked about what he believed at the time to be heroin but Pierce protested that it was not heroin: "I know what was in that bag, it looked like heroin but that's not heroin." Finally, Pierce referred to a customer of his own who would buy "hard," "soft," and "dog" from him. Detective Miller explained to the jury that these were slang terms for crack cocaine, powder cocaine, and heroin respectively.

{¶13} Detective Miller testified that the vehicle stopped on Melshore Drive approximately 300 feet from Fairfax Elementary School and the baggies by the fence were approximately 500 feet from school property. He also testified that the drugs recovered were packaged in a way "synonymous with drug trafficking."

{¶14} On November 7, 2017, the jury returned a verdict of "guilty" to Counts 1 (Trafficking in Cocaine), 2 (Possession of Cocaine), 4 (Aggravated Trafficking in Drugs),

4

and 5 (Aggravated Possession of Drugs), and a verdict of "not guilty" to Count 3 (Trafficking in Marijuana).

**{¶15}** On December 14, 2017, a sentencing hearing was held. Prior to sentencing, the trial court merged Count 2 (Possession of Cocaine) into Count 1 (Trafficking in Cocaine) and Count 5 (Aggravated Possession of Drugs) into Count 4 (Aggravated Trafficking in Drugs). The court ordered Pierce to serve concurrent thirty-six-month prison terms for Counts 1 and 4; advised him of optional post release control for a period of up to three years; and ordered him to pay court costs and the costs of prosecution.

**{¶16}** On December 19, 2017, Pierce's sentence was memorialized in a Judgment Entry of Sentence.

**{¶17}** On January 18, 2018, Pierce filed a Notice of Appeal. On appeal, Pierce raises the following assignments of error:

**{¶18}** "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A)."

**{¶19}** "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶20}** The manifest weight of the evidence and the sufficiency of the evidence are distinct legal concepts. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 44. With respect to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991),

5

paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶21} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶22} In order to convict Pierce of Trafficking, it was necessary for the State to prove, beyond a reasonable doubt, that he knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed cocaine and 4F-PHP, when he knew or had reasonable cause to believe that the cocaine and 4F-PHP were intended for sale or resale. R.C. 2925.03(A)(2).[2]

{¶23} Pierce contends that "the State failed to provide sufficient evidence to prove beyond a reasonable doubt that he was the individual driving the car or was anywhere near the car that evening" or "that Mr. Pierce was trafficking in drugs that evening." Appellant's brief at 5 and 7. We disagree.

---

2. The Possession convictions would be lesser included offenses of the Trafficking convictions.

**{¶24}** The presence of Pierce's DNA on the steering wheel, gear shift, and driver's side door of the vehicle as well as on the baggies of cocaine and 4F-PHP is evidence, when viewed in a light most favorable to the prosecution, that Pierce was transporting cocaine and 4F-PHP for sale. Further evidence that Pierce was driving the vehicle and trafficking in drugs are the facts that an African-American male was observed driving the car toward Pierce's girlfriend's home and abandoned the car near the home; his cell phone was found in close proximity to the cocaine and 4F-PHP; Pierce demonstrated knowledge of the drugs involved; and the cocaine and 4F-PHP were found packaged and/or in amounts suggesting that they were intended for sale rather than personal use.

**{¶25}** Relevant to the weight of the evidence, Pierce notes the following: The DNA of multiple contributors was found on the vehicle and the baggies and so it cannot be concluded that Pierce was driving the vehicle or transporting the baggies on the night in question. Pierce was never positively identified as the driver of the vehicle. Pierce offered the exculpatory explanation that he was waiting at his girlfriend's house for a friend to deliver his cell phone and some marijuana.

**{¶26}** Pierce raises many more arguments of a negative character. Pierce was not the owner of the vehicle and the police never made contact with the actual owner. Pierce was not positively identified as the driver of the vehicle. The police did not contact or visit Fourqurean on the morning of the incident. No scales or other instruments associated with trafficking were found.

**{¶27}** These arguments, while exposing weaknesses in the State's case against Pierce, fail to convince that the greater amount of credible evidence favored Pierce's acquittal or that the jury's verdicts resulted in a miscarriage of justice. The police

7

attempted to find the registered owner of the vehicle, visiting the owner's Cleveland address, speaking with a neighbor and a woman claiming to be his mother, and leaving messages. Against these efforts must be weighed Pierce's thoroughly unconvincing claim that the vehicle was being operated by "his dude," who allows Pierce to use the vehicle and delivers drugs for Pierce's personal use, but about whose identity Pierce can offer nothing. Also supporting the conclusion that Pierce was operating the vehicle is the fact that it was being driven toward the address at which Pierce was residing at high speeds by someone who appeared to be familiar with the streets in that part of Mentor.

{¶28} Although the DNA of multiple contributors was found on the various items of evidence, Pierce's own cell phone was found among the items. The possibility that Pierce abandoned this phone with the drugs in flight from the police is at least as likely a possibility (if not more) than that the phone was in possession of a friend delivering drugs to Pierce.

{¶29} The State's case against Pierce is greatly strengthened by Pierce's incriminating statements to the police. Pierce changed his account of the matter to the police during the course of the interview. Initially denying any knowledge of the vehicle, Pierce claimed it belongs to a friend who allows him to use it once the police confronted Pierce with possibility of his DNA being found in the vehicle. Also noteworthy was Pierce's knowledge that the drug suspected by the police to be heroin was not in fact heroin, although it admittedly looked like heroin. The jury was entitled to draw its own inference as to how Pierce knew what the drug looked like and its actual identity was other than what it appeared to be. These statements to Detective Miller, while not exactly a confession of guilt, are sufficiently incriminating to dispel reasonable doubts

that Pierce might not have been driving the vehicle and transporting the items recovered therefrom.

{¶30} The assignments of error are without merit.

{¶31} For the foregoing reasons, Pierce's convictions for Trafficking and Possession are affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.